Filed 12/24/14  P. v. Pimentel CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>ROSALIO PIMENTEL,<br><br>       Defendant and Appellant.<br><br><br>In re ROSALIO PIMENTEL,<br><br>       on Habeas Corpus. | A138935<br><br>(San Mateo County<br>  Super. Ct. No. SC076531A)<br><br><br>A142492 |

This is a consolidated direct appeal from judgment and petition for writ of habeas corpus (habeas corpus petition) brought by defendant Rosalio Pimentel.  The issues raised on direct appeal and by way of the habeas corpus petition are essentially the same, and thus may be considered collectively:  Was defendant effectively abandoned by his attorney during trial when she:  (1) failed to object to admission of certain testimony from law enforcement officers regarding the investigation underlying his arrest, and (2) failed to request a hearing to determine whether certain incriminating statements that he made during his post-arrest police interview were voluntary within the meaning of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  We affirm the judgment and summarily dismiss the habeas corpus petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2012, an information was filed in San Mateo County charging defendant with the sole offense of selling methamphetamine in violation of Health and Safety Code section 11379. A jury trial began April 2, 2012, during which the following evidence was presented.

In 2011, Gerardo Vega, while facing deportation, was arrested for possession of 13 ounces of methamphetamine. Vega agreed to act as an informant for the Redwood City Police Department (the department) in exchange for leniency in his case. Specifically, Vega agreed to assist the police in arranging drug deals with persons in Redwood City, and to later provide testimony in court relating to the deals. Vega was told that he and his family would probably need to move away from the area for safety reasons once his informant work was finished.

As explained during trial by Officer Perna, Vega's informant work was part of a broad effort by the department's street crimes suppression team to address Redwood City's drug-dealing problem. This team decided to recruit a confidential informant with credible connections to the City's "criminal underworld" (i.e., an informant with a criminal history) to engage in controlled drug buys under police supervision. According to Officer Perna: "I've worked in Redwood City for 13 years. I'm known by pretty much everyone in the city who – especially criminals. [¶] It would be hard, if not impossible for myself, to try to infiltrate a criminal organization."

Vega was thus chosen by the department to work as an informant for the street crimes suppression team. And, pursuant to this work, Vega then contacted defendant with a request to purchase methamphetamine. Vega had been friendly with defendant for over four years, but knew him only by the names, "Jose Molina" and "Chico."

On December 7, 2011, Vega called defendant in the presence of a police officer, Officer Santiago, and arranged to meet him on Buckeye Street to buy a gram of methamphetamine for $80. The police searched Vega's person and gave him $80 in marked bills before he left to meet defendant. A one-way radio transmitter was also placed in Vega's car. Vega then drove, late at night, to Buckeye and Stambaugh Streets,

with Officer Santiago and another officer following him in an unmarked car. Once there, defendant approached Vega's vehicle on foot, got inside, and asked to be driven to a nearby convenience store. During the drive, defendant gave Vega a baggie, which he took and placed in his pocket without examining it. In return, Vega gave defendant the $80 in marked bills. Defendant then exited Vega's car and entered the convenience store, while Vega drove away from the store and back to the police station.

On the way back to the station, Vega opened the baggie and realized defendant had given him marijuana instead of methamphetamine. He discussed this mistake with the police officers (who had continued throughout this time to follow Vega in an unmarked car). The officers instructed Vega to contact defendant again to inform him what had happened. Defendant, when contacted, told Vega to return immediately to the convenience store. Once there, defendant approached the passenger window of Vega's car and handed him a bag of methamphetamine, stating: "my bad bro."

Officer Santiago, who had parked nearby, could hear defendant apologizing to Vega on the wire. However, Officer Santiago lost sight of defendant once the narcotics were in Vega's hands because he was focused on Vega. Nonetheless, Officer Santiago recognized defendant from his police work before losing sight of him. At trial, Officer Santiago explained that he had known defendant since 2006 or 2007, and had spoken to him while on duty at least 15 times. On the night in question, outside the convenience store, he had a clear view of defendant.

The officers later interviewed Vega regarding his transaction with defendant. During the interview, they showed Vega a photograph of defendant that Vega positively identified. They also inventoried the bag of methamphetamine, which was estimated to contain 20 to 30 usable quantities.[1] Sometime later, Vega and his family moved out of the Bay Area with the assistance of the San Mateo County District Attorney's Office,

---

[1] Counsel stipulated that the bag Vega obtained from defendant contained a usable quantity (0.83 grams) of methamphetamine. Counsel further stipulated that Vega had prior convictions for misdemeanor battery and misdemeanor possession of methamphetamine.

which has a program to assist crime witnesses and victims by providing financial, legal and social support services.

At trial, defendant testified in his own defense and denied that he was the person who sold the bag of methamphetamine to Vega. Defendant smoked marijuana, but did not use any other drugs, or sell any type of drugs. Defendant knew Officer Santiago from the street, where the officer had spoken to him about smoking marijuana, but had never arrested him. He had worked for several years at a ranch doing landscaping and other work with his uncle.

Defendant acknowledged being acquainted with Vega through his cousin, Manual, who was friends with Vega. He had known Vega for four or five years, and mostly conversed with him in Spanish. Defendant had never spent time alone with Vega, but had once observed him in possession of methamphetamine. At the time, Vega told him it was 12 or 13 ounces of "crystal or methamphetamine." Defendant did not report seeing Vega in possession of these drugs because he was scared of Vega. Defendant was aware that Vega had previously been arrested for possession of methamphetamine.

On April 8, 2012, the jury found defendant guilty of one count of possession of methamphetamine. On May 31, 2012, following a hearing, the trial court suspended imposition of a sentence and placed defendant on supervised probation for a period of three years, subject to certain terms and conditions, including spending six months in county jail, with credit for two days time served. This appeal and habeas corpus petition followed.

## DISCUSSION

Defendant raises two primary arguments in these proceedings. First, defendant contends his trial counsel was "functionally absent from the proceedings," as reflected in her failure to object to certain testimony from law enforcement witnesses that he opines was irrelevant and highly inflammatory. As a result, defendant contends his rights to effective assistance from counsel and a fair trial were violated. Second, defendant contends these rights were further violated by his trial counsel's failure to request a hearing outside the jury's presence regarding the admissibility of his extra-judicial

4

statements to police after being advised of, and waiving, his *Miranda* rights.  We address each argument in turn below.

## I.  Legal Principles Governing Effectiveness of Assistance from Counsel.

The legal principles applicable to defendant's contentions are well-established.  To prevail on a claim of ineffective assistance from counsel, a defendant must prove more than a failure by counsel to object to inadmissible evidence; he must show counsel's performance fell below a standard of reasonable competence and that prejudice resulted.  (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)  To establish prejudice in this context, the defendant must show a reasonable probability that, but for defense counsel's deficient performance, the result of the trial would have been more favorable to him.  (*People v. Seaton* (2001) 26 Cal.4th 598, 665.)

"If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)  Under these circumstances, the defendant must overcome a strong presumption that counsel's conduct was sound trial strategy or otherwise within the wide range of reasonable professional assistance.  (*People v. Burnett* (1999) 71 Cal.App.4th 151, 180; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1215.)

Generally, courts are in agreement that, if "a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient."  (*People v. Kipp* (1998) 18 Cal.4th 349, 366.)  In this case, however, defendant relies on a distinct line of authority to argue that, under the facts of his case, he should be excused from showing prejudice.  Specifically, he relies on *United States v. Cronic* (1984) 466 U.S. 648, 659 (*Cronic*), which holds that prejudice may be presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing . . . ."  In so holding, the high court reasoned that, in such a situation, "there has been a denial of Sixth

Amendment rights that makes the adversary process itself presumptively unreliable."[2] (*Ibid.*) According to defendant, the *Cronic* presumption of prejudice should apply here because "counsel was functionally absent from the proceedings."

We, however, decline to apply *Cronic*'s quite limited holding to the circumstances at hand. The record makes clear that defendant's trial counsel did not completely fail to subject the prosecutor's case against him to meaningful adversarial testing, as *Cronic* requires. (*Bell v. Cone* (2002) 535 U.S. 685, 696-697 [in order for *Cronic*'s presumption of prejudice to apply based on an attorney's failure to test the prosecutor's case, "the attorney's failure must be complete"].) To the contrary, as the prosecution points out, not only did defense counsel raise several objections before and during trial to the prosecutor's questioning or proposed line of questioning,[3] defense counsel also presented a thoughtful argument to the jury after the close of evidence, during which she highlighted, among other things, Vega's own criminal past and the considerable financial and other assistance he was receiving in exchange for his informant work (factors relevant to both his credibility and tendency for bias). These actions by defendant's counsel are fully consistent with a deliberate trial strategy, whatever its merits or ultimate degree of success; defendant points to nothing in the record that would compel a different conclusion. As such, we abide by the usual legal standards governing a criminal defendant's claim of ineffective assistance from counsel, rather than the limited holding applied in *Cronic*. (E.g., *Strickland v. Washington* (1984) 466 U.S. 668, 684-689, 693-694 (*Strickland*).)

---

[2]     *Cronic* sets forth additional grounds for presuming prejudice where counsel has provided criminal defendants with ineffective assistance, none of which are relevant here. (466 U.S.*, supra,* at p. 659.) As such, we need not further discuss them.

[3]     For example, defense counsel successfully moved in limine to bar reference to defendant's immigration status or any gang investigation, sought a stipulation reflecting Vega's criminal record, engaged in extensive cross-examination of prosecutorial witnesses, and objected multiple times to various lines of questioning involving the police officer witnesses.

6

**II.     Failure to Object to Inflammatory Testimony from Police Witnesses.**

As stated above, defendant challenges as ineffective assistance from counsel his trial attorney's failure to object, either in limine or during questioning, to certain testimony from law enforcement officials relating to the investigation that led to his arrest.  Specifically, defendant identifies the following as objectionable:  (1) Officer Perna's testimony regarding the department's need to recruit an informant (Vega) to infiltrate a "criminal organization" and "criminal elements" in Redwood City; (2) Officer Perna's and Officer Santiago's testimony regarding the presence of "drug dealers" in Redwood City and their use of monikers or nicknames; and (3) and testimony relating to the "danger" faced by Vega and other informants.[4]  According to defendant, no valid excuse exists for his counsel's failure to challenge the admission of this irrelevant and highly inflammatory testimony.  For reasons set forth below, we disagree with defendant's conclusions.

As the People note, the presumption that trial counsel's failure to object to certain questions "might be considered sound trial strategy" is not easily overcome.  (See *Strickland, supra*, 466 U.S. at p. 689.)  There are many reasons defense counsel may remain silent during prosecutorial questioning, and reviewing courts, far removed from actual trial, are loathe to assume in hindsight that counsel's silence is something other than his or her reasoned choice.  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502 ["deciding whether to object is inherently tactical"].)  Thus, not surprisingly, in California, "failure to object rarely constitutes constitutionally ineffective legal

---

[4]     Specifically, defendant was concerned with the testimony from Officers Perna and Santiago that Vega was hired as an informant in 2011 in order to infiltrate the "criminal organization[s]" of drug dealers operating in Redwood City.  As set forth above, the officers had decided to use someone from the "criminal underworld" as a government agent to buy drugs from local dealers as part of a wider investigation into drug dealing in the Redwood City area.  The officers acknowledged that, based upon Vega's work in the investigation, he faced the risk of being hurt or killed, a circumstance that led the District Attorney's Office to move Vega and his family out of the area once the investigation was concluded.

representation." (*People v. Gray* (2005) 37 Cal.4th 168, 209; see also *People v. Klvava* (1992) 11 Cal.App.4th 1679, 1718.)

In this case, defendant in fact requested from his trial counsel a declaration explaining why she failed to object to the above-described subject matters and, in particular, to the testimony from Officers Perna and Santiago regarding the decision to hire Vega to "infiltrate" the "criminal organization" of drug dealers in Redwood City. Complying with this request, defense counsel stated that her trial strategy was to portray Vega as an untrustworthy criminal who identified defendant as a drug dealer in order to "pad his numbers" in the investigation to continue receiving the significant benefits the District Attorney's office offered in return for his assistance: "Vega was getting a great deal from his [informant] work – a job, a home – legal status, expungement of his criminal records – things he could never have dreamed of if it hadn't been for his becoming a 'snitch.' I think it was made clear in the trial that although [defendant] was caught up in the same net of the overall investigation because of Vega's work, his case was separate and apart from it."

Defendant rejects his counsel's purported trial strategy. In doing so, defendant first argues that Officer Perna's testimony regarding their investigation of a "criminal organization" in Redwood City injected the highly-prejudicial gang issue into the case, despite the absence of any evidence of his membership in a gang. As defendant notes, his attorney secured a pretrial ruling barring admission of gang-related evidence or argument. He insists, however, that, by failing to object to this testimony by Officer Perna, his counsel effectively permitted the prosecutor to flout the pretrial ruling on gang evidence.

We disagree with defendant in this regard. Having considered the record as a whole, we conclude that, reasonably interpreted, Officer Perna's reference to a "criminal organization" relates more generally to a drug-dealing operation in the Redwood City area. As such, we find the record, at best, ambiguous as to whether his counsel had valid grounds to object to this testimony on the basis of the trial court's pretrial ruling on gang evidence.

8

More generally, we find no valid reason to reject defense counsel's description of the trial strategy that led her to refrain from objecting to testimony regarding the broader nature of the investigation underlying Vega's work and defendant's arrest. Rather, we agree with the prosecution that defense counsel's trial strategy was sufficiently grounded in the law and the facts to defeat defendant's claim of ineffective assistance from counsel. (*People v. Anderson, supra,* 25 Cal.4th at p. 569.)

For example, turning to defendant's argument regarding what he deems the "[m]ost damaging" line of questioning that his counsel permitted to go forward without objection – to wit, questioning regarding the officers' concerns for Vega's safety as an informant. He argues: "In this case, where the only question was the credibility of Vega and [defendant], this evidence of fear without instruction from the judge or argument from Defense counsel, only supports Vega's credibility and casts [defendant] in with those who would do Vega harm, without any shred of evidence that this was true." However, contrary to defendant's argument, this testimony was undoubtedly relevant. Indeed, as defendant repeatedly states, the single most important issue in the case was whether the two people involved in this crime – defendant and Vega – were credible. Thus, the circumstances surrounding Vega's involvement in the crime, and his role as the crime's instigator, were vital to the jury's consideration of whether his version of what happened on the night in question should be credited. Under these circumstances, the prosecution was entitled to present evidence that Vega may have put his own safety at risk during the course of the investigation in its efforts to bolster his credibility as a witness. (See *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368-1689 ["Just as the fact a witness expects to receive something in exchange for testimony may be considered in evaluating his or her credibility [citation], the fact a witness is testifying despite fear of recrimination is important to fully evaluating his or her credibility. For this purpose, it matters not the source of the threat. It could come from a friend of the defendant, or it could come from a stranger who merely approves of the defendant's conduct or disapproves of the victim"]; Evid. Code § 780.) Indeed, this evidence was particularly important to the prosecution's case given Vega's own criminal past, including his

9

conviction for possession of 13 ounces of methamphetamine. The mere fact that this evidence may have weakened defendant's case by bolstering Vega's credibility is not cause to fault defense counsel for failing to object to it. Counsel may have simply recognized the relevance of such evidence and decided not to object to it in order to avoid highlighting it further in jurors' minds.[5] As the California Supreme Court has observed, "competent counsel may often choose to forego even a valid objection" for tactical reasons. (*People v. Riel* (2000) 22 Cal.4th 1153, 1197; *People v. Jackson* (1980) 28 Cal.3d 264, 292.) And reviewing courts, far removed from trial, are notably ill-equipped to distinguish between an attorney's tactical reasoning and incompetence. Such is the case here. On this record, there simply is insufficient evidence of professional incompetence to permit defendant to overcome the presumption that his counsel's conduct was "within the wide range of reasonable professional assistance." (*People v. Burnett, supra,* 71 Cal.App.4th at p. 180; *People v. Bunyard, supra,* 45 Cal.3d at p. 1215.)

We reach the same conclusion with respect to defendant's concerns about the police witness testimony that drug dealers commonly use nicknames, which are often tattooed on their person. Because such testimony was relevant and not unduly prejudicial, defense counsel had an acceptable basis for declining to challenge it. It is undisputed that defendant has a nickname, "Chico," which was tattooed on his body, and that Vega only knew defendant by this nickname or the name, "Jose Molina," rather than by his real name, even though the men had been acquainted for several years. It is also undisputed Officer Santiago had expertise regarding the tendency of drug dealers to adopt nicknames in order to avoid detection by police. Under these circumstances, it is

---

[5]  In fact, defense counsel did object, albeit unsuccessfully, to the following related exchange:

"Q.   You didn't want someone to come to the police department; hey are there any police reports involving [defendant] and Vega; and get access to the report?

"A.   Correct.

"Q.   You didn't want to get anybody killed; correct?

"[Defense counsel]: Objection, your honor."

reasonably likely that defense counsel deliberately chose to forgo any objection to the testimony relating to these facts in recognition of their relevance to the key issue in this case – to wit, whether Vega correctly identified defendant to police as the person who sold him the drugs in question. As stated above, it is not our role to second-guess counsel's decision-making from a position so far removed from the actual trial where, as here, valid grounds support it.

Thus, for the reasons stated, we reject defendant's claim of ineffective assistance of counsel based on the failure to object to the above-described police witness testimony.

### III.     Failure to Request a Hearing to Address *Miranda* Issues.

Defendant's remaining contention is that his trial counsel provided constitutionally-inadequate representation when she failed to request a *Miranda* hearing out of the jury's presence to address the admissibility of his statements to Detective Jeff Clements during his March 29, 2012, post-arrest interview.

As defendant notes, "under the due process clause of the Fourteenth Amendment to the United States Constitution . . . an involuntary statement obtained by a law enforcement officer from a criminal suspect by coercion is inadmissible in a criminal proceeding." (*People v. Neal* (2003) 31 Cal.4th 63, 67.) As such, a statement obtained by an officer from a suspect during a custodial interrogation "may be admitted in evidence only if the officer advises the suspect of both his or her right to remain silent and the right to have counsel present at questioning, and the suspect waives those rights and agrees to speak to the officer." (*Ibid*.) The prosecution bears the burden of proving the defendant's waiver of rights and subsequent incriminating statements were voluntarily, knowingly and intelligently made. (*People v. Whitson* (1998) 17 Cal.4th 229, 248.) A showing of voluntariness must be based on "all the surrounding circumstances," including the defendant's intelligence, sophistication and prior experiences, his mental and physical state at the time of interrogation, and the methods employed by his interrogators. (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 226.)

11

In this case, defendant correctly states that his trial counsel did not raise the issue of a possible *Miranda* violation before or during trial. Counsel later explained this omission in her post-trial declaration as follows:

"1. Rosalio and I watched the video of his [police] interview together, I did not see or hear any issues regarding his not understanding the Miranda warnings, and as we discussed it, he did not say that he didn't understand the warnings. It was also clear to me that he understood the English speaking officer and when he didn't understand, he asked for clarification.

"2. Rosalio understands English well and can express himself and converse in English, but we decided it would be better to use an interpreter for trial to ease his comfort level and make it easier for the jury to understand him. It is always a concern that with an interpreter, there is another layer between the client and the jury. Also, for a person who understands English, it can be sometimes be [sic] confusing. We discussed this, but opted to use an interpreter. Sometimes, he had to be admonished to wait until the interpreter finished interpreting the question because he did understand the question in English. We spoke in both English and Spanish outside of court."

We conclude, like before, that this explanation by defense counsel is wholly reasonable and consistent with the record as a whole, and thus defeats defendant's challenge. As Detective Clements, the interviewing officer, confirmed under oath, before interviewing defendant following his arrest in this case, he read defendant his *Miranda* rights from a form in English. Defendant then checked the appropriate box indicating that he understood each right until he reached the fourth right, which stated: "If you cannot afford an attorney, one will be appointed for you free of charge before questioning if you want." At that point, defendant told Detective Clements that he was not sure that he understood this right as provided in English. Accordingly, Detective Clements, who had been conversing with defendant in English without difficulty, gave the form to defendant and told him to read the reverse side of it, where the *Miranda* rights were set forth in Spanish. Defendant complied with this instruction before indicating to Detective

12

Clements that he understood and was waiving his *Miranda* rights in their entirety. The interrogation thus went forward.[6]

This testimony by Detective Clements is consistent with defense counsel's declaration, and supports her decision to forego any *Miranda* challenge. First, it is quite clear from the record that defense counsel considered the facts relevant to the *Miranda* issue, including her own client's observations upon reviewing the videotape of his police interview. Under the legal standards set forth above, defense counsel thus had valid grounds for concluding based upon this evidence that any challenge would have likely failed given the informed and voluntary nature of defendant's waiver of rights. Even if defendant was unable to fully understand the English version of his rights, he could undoubtedly understand the Spanish version that was also provided to him in writing by Detective Clements. Indeed, defendant indicated, not once, but twice – to defense counsel and to Detective Clements – that he did in fact understand these rights. As such, on this record, there is simply no basis for this court to conclude defendant received ineffective assistance from counsel in violation of his constitutional rights due to his attorney's decision to forego any challenge under *Miranda*. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1093 [" 'coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of [*Miranda*]' "].)

Accordingly, defendant's remaining contention fails and the jury's verdict against him must stand.

### DISPOSITION

The judgment is affirmed and the petition for writ of habeas corpus is summarily dismissed. No order to show cause shall issue.

_____

---

[6] During the interrogation, defendant denied being involved in drug dealing or selling methamphetamine to Vega, but acknowledged that he had once helped a neighbor procure methamphetamine, and that, another time, a woman approached him on the street asking whether he had the drug.

13

Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.

*People v. Rosalio Pimentel*, A138935 and *In re Rosalio Pimentel on Habeas Corpus*, A142492

14